**No. 23-_____**

**UNITED STATES COURT OF APPEALS**
**FOR THE TENTH CIRCUIT**

***In re: Santa Fe Natural Tobacco Company***
***Marketing and Sales Practices & Products Liability Litigation***

On Petition For Permission To Appeal From
The United States District Court For The District Of New Mexico

No. 1:16-md-2695-JB-LF (MDL No. 2695)
(The Honorable James O. Browning)

# DEFENDANTS' RULE 23(f) PETITION FOR PERMISSION TO APPEAL


Andrew G. Schultz
Melanie B. Stambaugh
**RODEY, DICKASON, SLOAN, AKIN & ROBB, P.A.**
201 3rd Street NW, Suite 2200
Albuquerque, NM 87102
aschultz@rodey.com
mstambaugh@rodey.com
505-768-7288

David M. Monde
**JONES DAY**
1221 Peachtree Street NE
Suite 400
Atlanta, GA 30309
dmmonde@jonesday.com
404-521-3939

Meir Feder
Sharyl A. Reisman
**JONES DAY**
250 Vesey Street, Floor 34
New York, NY 10281
mfeder@jonesday.com
sareisman@jonesday.com
212-326-3939

Noel J. Francisco
William D. Coglianese
**JONES DAY**
51 Louisiana Drive NW
Washington, DC 20001
njfrancisco@jonesday.com
wcoglianese@jonesday.com
202-879-3939

*Counsel for Defendants-Petitioners Santa Fe Natural Tobacco Co., Reynolds American Inc., and R.J. Reynolds Tobacco Co.*

## TABLE OF CONTENTS

**Page**


INTRODUCTION ........ 1

QUESTIONS PRESENTED ........ 3

BACKGROUND ........ 4

A. SFNTC's marketing of Natural American Spirit cigarettes ........ 4

B. Plaintiffs' claims and request for class certification ........ 5

C. The class-certification ruling ........ 7

RELIEF SOUGHT ........ 12

REASONS FOR GRANTING THE PETITION ........ 12

I. Review is needed to resolve the issue that extensive individualized inquiries to establish who has a claim may defeat predominance under Rule 23(b)(3). ........ 12

II. Review is needed to correct the district court's misapplication of the requirements of *Comcast*. ........ 20

CONCLUSION ........ 24

CERTIFICATE OF COMPLIANCE ........ 25

CERTIFICATE OF ELECTRONIC SUBMISSION ........ 26

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Briseno v. ConAgra Foods, Inc.*,
844 F.3d 1121 (9th Cir. 2017)............................................................ 16

*Broomfield v. Craft Brew All., Inc.*,
2018 WL 4952519 (N.D. Cal. Sept. 25, 2018)......................................... 23

*Carpenter v. Boeing Co.*,
456 F.3d 1183 (10th Cir. 2006)........................................................... 12

*CGC Holding Co. v. Broad & Cassel*,
773 F.3d 1076 (10th Cir. 2014)........................................................... 18

*Cherry v. Dometic Corp.*,
986 F.3d 1296 (11th Cir. 2021)..................................................8, 16, 17

*Cline v. Sunoco, Inc.*,
333 F.R.D. 676 (E.D. Okla. 2019)........................................................ 13

*Cole v. ASARCO Inc.*,
256 F.R.D. 690 (N.D. Okla. 2009) ....................................................... 13

*Comcast Corp. v. Behrend*,
569 U.S. 27 (2013) .................................................. 2, 4, 9, 20, 21, 22, 23

*Evans v. Brigham Young Univ.*,
2023 WL 3262012 (10th Cir. May 5, 2023)............................................ 14

*Goldemberg v. Johnson & Johnson Consumer Cos.*,
317 F.R.D. 374 (S.D.N.Y. 2016)........................................................... 23

*Hayes v. Wal-Mart Stores, Inc.*,
725 F.3d 349 (3d Cir. 2013)................................................................. 14

*Hilsley v. Ocean Spray Cranberries, Inc.*,
2018 WL 6300479 (S.D. Cal. Nov. 29, 2018)......................................... 23

*In re Dial Complete Mktg. & Sales Practices Litig.*,
320 F.R.D. 326 (D.N.H. 2017)............................................................. 23

*In re EpiPen Mktg., Sales Pracs. & Antitrust Litig.*,
2020 WL 1180550 (D. Kan. Mar. 10, 2020)........................................... 13

*In re Nexium Antitrust Litig.*,
777 F.3d 9 (1st Cir. 2015)........................................................................ 15

*In re Niaspan Antitrust Litig.*,
67 F.4th 118 (3d Cir. 2023) ...................................................................... 14

*In re Petrobras Securities*,
862 F.3d 250 (2d Cir. 2017)........................................................................ 15

*Krakauer v. Dish Network, L.L.C.*,
925 F.3d 643 (4th Cir. 2019) ...................................................................... 15

*Mullins v. Direct Digital, LLC*,
795 F.3d 654 (7th Cir. 2015) ...................................................................... 16

*Price v. L'Oreal USA, Inc.*,
2018 WL 3869896 (S.D.N.Y. Aug. 15, 2018) ........................................... 23

*Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare*,
863 F.3d 460 (6th Cir. 2017) ...................................................................... 15

*Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.*,
821 F.3d 992 (8th Cir. 2016) ...................................................................... 16

*Seeligson v. Devon Energy Prod. Co.*,
761 F. App'x 329 (5th Cir. 2019) (per curiam) .......................................... 16

*Smith v. LifeVantage Corp.*,
341 F.R.D. 82 (D. Utah 2022)..................................................................... 13

*Townsend v. Monster Bev. Corp.*,
303 F.Supp.3d 1010 (C.D. Cal. 2018)......................................................... 21

*Vallario v. Vandehey*,
554 F.3d 1259 (10th Cir. 2009)................................................ 3, 12, 13, 20

*Wal-Mart Stores, Inc. v. Dukes*,
564 U.S. 338 (2011) .................................................................................... 19

*Wallace B. Roderick Revocable Living Tr. v. XTO Energy, Inc.*,
725 F.3d 1213 (10th Cir. 2013)................................................................... 18

**RULES**

Fed. R. Civ. P. 23.............................................................................................2, 17

## INTRODUCTION

On Plaintiffs' motion to certify classes of Natural American Spirit ("NAS") cigarette purchasers, the district court recognized that no records identify these purchasers, and each claimant would have to prove, individually, that he or she actually purchased the product. The court properly held that most of Plaintiffs' proposed classes could not be certified, but—notwithstanding the need for thousands of mini-trials over whether each putative class member actually bought the cigarettes at issue—the court certified classes of NAS menthol cigarette purchasers in six states. In doing so, the court made significant errors involving important and recurring issues under Rule 23. This Court should review and correct those errors, reverse certification of the six classes, and bring clarity to the law in this Circuit.

*First*, the district court recognized that the law does not permit a basic and contestable element of each individual's claim—that he or she actually bought the product at issue—to be proved through shortcuts like self-serving affidavits. Accordingly, resolving this issue will inevitably require thousands of mini-trials. But the court held that, as a matter of law, such individualized determinations of each claimant's class membership cannot defeat predominance under Rule 23(b)(3). In doing so, the court effectively created an unwritten exemption to Rule 23(b)(3), which requires that common questions must "predominate over

*any* questions affecting only individual members." (Emphasis added.) Nothing in Rule 23's text permits treating these individual questions as less relevant to predominance than others. And from a practical standpoint, certifying class actions despite such overwhelming individual inquiries would defeat the efficiency goals at the heart of a Rule 23(b)(3) class action.

Some Circuits have held that when such questions of "ascertainability"—identifying class members—require individualized litigation, that is an absolute bar to class certification. But at a minimum, those individual questions must be considered like any others in determining whether a proposed class satisfies Rule 23(b)(3)'s predominance requirement. This Court should grant review not only to correct the district court's error—and clarify that individualized class-membership inquiries can predominate over any common questions, foreclosing certification—but also because this Court is among the few Circuit Courts that have yet to address ascertainability, leaving district courts within this Circuit divided over what rule should apply on this recurring class-action question.

*Second*, the district court also erred in holding that Plaintiffs' damages model fits their theory of liability regarding the six classes, as the Supreme Court requires for class certification. *Comcast Corp. v. Behrend*, 569 U.S. 27, 35-36 (2013). Plaintiffs' theory is that the statement that NAS menthol cigarettes contain "additive-free natural tobacco" was deceptive because some natural menthol—

added to the cigarette filter—migrates into the tobacco, after manufacture and packaging of the product. But Plaintiffs' damages expert admitted that his model would *not* isolate the price difference that would result from menthol cigarette consumers learning about added menthol. Instead, it would measure the difference between the value of a cigarette with no additives whatsoever and an ordinary cigarette—which generally contains dozens of chemical additives—and treat that entire amount as turning on the presence or absence of added natural menthol alone. This is squarely contrary to *Comcast*'s requirement to isolate the damages attributable to Plaintiffs' theory of liability.

Review of these important questions is warranted now. The district court's errors implicate "significant" and "unresolved issue[s] of law relating to class actions." *Vallario v. Vandehey*, 554 F.3d 1259, 1263 (10th Cir. 2009). And given the settlement pressure that certified classes can create—a salient consideration here, given the potentially thousands of individuals in the six certified classes—these issues are "likely to evade end-of-case review." *Id.*

## QUESTIONS PRESENTED

**1.** Did the district court err in holding that the need for individualized inquiries into whether each of thousands of claimants purchased the product at issue cannot, without more, defeat predominance under Rule 23(b)(3)?

**2.** Did the district court err in holding that a damages model that calculates damages as if NAS cigarettes had all of the additives of regular cigarettes, instead of just added natural menthol, is consistent with *Comcast Corp. v. Behrend*, 569 U.S. 27 (2013)?

## BACKGROUND

### A. SFNTC's marketing of Natural American Spirit cigarettes

Defendant Santa Fe Natural Tobacco Co. ("SFNTC")[1] sells various styles of NAS cigarettes, including menthol and non-menthol. Dkt. 394 at 8-9 ("Order").[2] Until October 2017, NAS packages and advertisements used the terms "natural" and "additive-free" (or "100% additive-free") to describe the tobacco in NAS cigarettes; at that point, SFNTC ceased using those descriptors. *Id.* at 11, 24.

Concurrently, for over two decades—including the period relevant here—all NAS advertisements and packages have included disclaimers stating that NAS cigarettes are not safer than others. Beginning in 2000, that disclaimer read: "No additives in our tobacco does NOT mean a safer cigarette." *Id.* at 19. In October 2017, it was changed to: "Natural American Spirit cigarettes are not safer than other cigarettes." *Id.* at 21, 23.

---

[1] The other Defendants are Reynolds American Inc. and R.J. Reynolds Tobacco Co.

[2] Defendants have electronically sent the Order—which is currently sealed—to the Clerk's Office.

### B. Plaintiffs' claims and request for class certification

Plaintiffs commenced this litigation in 2015, claiming that the "natural" and "additive-free" descriptors (as well as the descriptor "organic") misled consumers. Plaintiffs advanced two distinct theories of deception relevant here.[3]

Plaintiffs' "safer-cigarette theory" posits that "natural" and "additive-free" misled consumers into believing NAS cigarettes are safer and healthier than other cigarettes—notwithstanding the disclaimers saying the opposite. Dkt. 219 ¶¶ 4-5 ("Compl."). Plaintiffs' "menthol theory" posits that purchasers of NAS menthol cigarettes were deceived by the "additive-free natural tobacco" descriptor, in that the natural menthol—which is put into the cigarette's filter, but due to its volatility partially migrates into the tobacco (*id.* ¶ 69)—should be considered an additive to the tobacco.

Plaintiffs sought certification of twelve state-specific classes—each comprising "[a]ll persons who purchased [NAS] cigarettes in" the relevant state—to pursue consumer-protection and unjust-enrichment claims. *Id.* ¶¶ 107-18; Dkt. 278 at 6. They also sought certification of a nationwide class of NAS menthol consumers to pursue a claim for breach of express warranty, or, in the alternative, eight state-specific subclasses of NAS menthol consumers—again, with each

[3] The district court dismissed a third theory of deception in 2017. Dkt. 146 at 176-77.

class comprising "[a]ll persons who purchased [NAS] menthol cigarettes in" the relevant jurisdiction. Compl. ¶¶ 119-27; Dkt. 278 at 6 & n.3.

**Safer-Cigarette Theory.** Plaintiffs primarily relied upon Dr. Jennifer Pearson, who opined that consumers believe "natural" or "additive-free" cigarettes "are or may be" safer than other brands. Dkt. 278 at 24. She did not opine regarding whether these perceptions affected consumers' purchasing behavior. Dkt. 362 at 61. Another of Plaintiffs' proffered experts, Dr. Michael Cummings, testified that consumers have "many reasons" for choosing NAS cigarettes—including reasons that have nothing to do with alleged health misperceptions, such as taste or SFNTC's use of U.S.-grown tobacco. *Id.* at 61-62.

Defendants offered evidence demonstrating that the studies Dr. Pearson reviewed do not support her conclusion. Dkt. 362 at 28-57. In addition, Defendants' expert Dr. Kent Van Liere surveyed NAS consumers and determined that: fewer than 10% of NAS purchasers mentioned health perceptions as a reason for purchase, nearly half do not report paying a premium for NAS, and only 5% mentioned health perceptions as a reason for paying more. Dkt. 362 at 73-74.

Defendants also demonstrated that liability under Plaintiffs' safer-cigarette theory would turn on individualized questions about what representations each consumer saw. In particular, the liability inquiry for each claimant would be significantly affected by whether that consumer saw NAS's disclaimer before

purchasing—a factor that could only be determined on a consumer-by-consumer basis. Dkt. 362 at 18-21, 105-10.

**Menthol Theory.** Plaintiffs similarly presented no evidence that consumers bought NAS menthol cigarettes because they believed that menthol is not an additive to those cigarettes' tobacco, or that no menthol is found in the tobacco at the time of smoking. All five proposed representatives of menthol classes testified that they were indifferent to where the menthol in NAS menthol cigarettes is located, and that this did not affect their purchasing decisions. Dkt. 362 at 79-80 (collecting testimony). And a 2012 focus-group study commissioned by SFNTC revealed that consumers "don't know, or care, how the menthol and the tobacco come together." *Id.* at 80 (citation omitted).

### C. The class-certification ruling

On September 1, 2023, the district court held that most of Plaintiffs' requested classes did not satisfy Rule 23's requirements, but certified six statewide classes asserting the menthol theory. Order at 419-23. The court's handling of several class-certification issues cut across its decisions on the classes. Two are particularly relevant here.

**Administrative Feasibility.** Defendants argued that there is no administratively feasible way of identifying class members, because cigarettes are typically purchased at retail, such that there are no records or databases of purchasers.

Accordingly, Defendants argued, claimant-by-claimant litigation would be necessary, and those inquiries would predominate over any common questions.

The district court noted that this Court has not squarely addressed whether difficulties identifying class members can foreclose certification. *Id.* at 242-43. After surveying decisions from other Circuits, the court stated that "[o]n a clean slate," it would follow the Third Circuit's approach, which requires plaintiffs to establish "that identifying class members is a manageable process that does not require much, if any, individual factual inquiry." *Id.* at 237 (quoting *Carrera v. Bayer Corp.*, 727 F.3d 300, 307-08 (3d Cir. 2013)); *id.* at 252.

The district court, however, "d[id] not believe" this Court would adopt that rule, predicting it "more likely" that this Court would follow an Eleventh Circuit decision that treats administrative feasibility as bearing exclusively on "the likely difficulties in managing a class action." *Id.* at 252-53 & n.65 (discussing *Cherry v. Dometic Corp.*, 986 F.3d 1296, 1301-05 (11th Cir. 2021)). Consistent with that Eleventh Circuit precedent, the court "predict[ed]" this Court would "weigh administrative feasibility," but would not view it "as a prerequisite." *Id.* at 252-53.

Applying this approach, the court found that Plaintiffs "will face substantial administrative difficulties" in identifying who actually purchased the products. *Id.* at 258. The court noted that Defendants have no records capable of identifying class members, Plaintiffs "have not demonstrated that any class members

have retained receipts or purchase records," and such retention was unlikely, particularly for the full relevant period (back to 2009). *Id.* at 257-58. Still, the court held, relying on the Eleventh Circuit decision, "[t]his conclusion alone does not doom the proposed class." *Id.* at 258; *id.* at 320, 348, 359, 384-85, 396, 405 (reiterating that "a single manageability problem"—by which the court meant ascertainability—"typically is insufficient on its own to prevent class certification"). The court did not consider whether individualized inquiries into whether each claimant actually purchased NAS cigarettes would predominate over common questions.

***Comcast*.** Defendants also argued that Plaintiffs' proposed damages model did not fit either of their theories of liability, in violation of *Comcast*, 569 U.S. 27. Plaintiffs' damages expert, Dr. Jean-Pierre Dubé, proposed a model that purported to determine the price premium attributable to the challenged descriptors, "natural" and "additive-free." Dkt. 278 at 35. But Dr. Dubé admitted that his model would not isolate the price value of what, specifically, Plaintiffs claimed to be actionable: the alleged implication that cigarettes with natural, additive-free tobacco are safer; or the failure to qualify the descriptor "additive-free natural tobacco" with the information that some menthol migrates from the filter into the tobacco of NAS menthol cigarettes. Instead, his model would measure the entire, undifferentiated value of each descriptor, including value that NAS

cigarettes concededly deliver (e.g., environmental benefits of natural products, a different taste, the absence of additives in the tobacco save for stray menthol migrating from the filter). Dkt. 362 at 85-87 (collecting testimony).

The court held that this failure to isolate the value of the alleged misperceptions meant Dr. Dubé's model "is not an adequate fit with the Plaintiffs' Safer-Cigarette liability theory," because it did not "isolat[e] the understandings which the Plaintiffs allege the challenged labels cause." Order at 287. The court recognized that "other interpretations of the label … may contribute to the cigarettes' price premium," and so a model that treats the entire premium as damages fails *Comcast*. *Id.* at 291-92.

The court reached the opposite conclusion, however, as to Plaintiffs' menthol theory. *Id.* at 299. Even though Dr. Dubé's model would sweep in the entire price premium attributable to "additive-free"—including the value of excluding non-menthol additives, like the chemical additives present in other cigarettes—the court held that the model was sufficiently tied to the menthol theory. The court relied on its past holding (on Defendants' motion to dismiss) that the use of "additive-free" on NAS menthol cigarette packaging and advertisements "plausibly misleads a reasonable consumer"—because menthol is an additive—and thus concluded that damages "do not rely on the consumers' interpretation of the label." *Id.* at 298-99 (citation omitted).

**The Certified Classes.** The district court's baseline finding was that ascertaining the identity of class members posed a significant difficulty for all proposed classes. But the court did not regard this as a sufficient basis for declining to certify any class. It was only where the court found an additional obstacle to class treatment—for example, as to the safer-cigarette theory, (1) the need for individual inquiries into which representations drove the purchase and what representations each consumer saw, and (2) the failure of the Plaintiffs' classwide damages model—that it denied certification on the grounds that common issues did not predominate and that class litigation was not superior to the alternatives.

The court thus held that the safer-cigarette classes could not be certified. It reached the same conclusion for the proposed nationwide menthol class, which presented insuperable difficulties in applying the laws of all fifty states. As to the statewide menthol classes, although they were subject to the same ascertainability problem as the others, the district court believed this Court would hold that the need for individual litigation over whether claimants purchased the product "alone do[es] not doom [a] proposed class." *Id.* at 258. It thus certified classes of all NAS menthol purchasers in California, Florida, Illinois, New Jersey, New Mexico, and New York. *Id.* at 319-20, 348-49, 359-60, 384-85, 396-97, 404-05.

## RELIEF SOUGHT

Defendants seek permission, under Rule 23(f) of the Federal Rules of Civil Procedure, to appeal the district court's order granting Plaintiffs' motion to certify a class action asserting claims under six states' consumer-fraud statutes.

## REASONS FOR GRANTING THE PETITION

This Court has "unfettered discretion" to grant interlocutory review of class-certification rulings. *Carpenter v. Boeing Co.*, 456 F.3d 1183, 1189 (10th Cir. 2006) (citation omitted). Review is "generally appropriate" if a decision is "manifestly erroneous," or "involve[s] an unresolved issue of law relating to class actions that is likely to evade end-of-case review" and that is "significant to the case at hand, as well as to class action cases generally." *Vallario*, 554 F.3d at 1263.

### I. Review is needed to resolve the issue that extensive individualized inquiries to establish who has a claim may defeat predominance under Rule 23(b)(3).

The decision below raises a significant and recurring question of law presently unresolved in this Circuit: how does the fundamental task of identifying class members—in this case, determining whether each claimant actually purchased the product—factor into the Rule 23 analysis? There is widespread divi-

sion among the other courts of appeals on that issue, and in the absence of guidance from this Court, this Circuit's district courts have split over the issue.[4]

This case underscores the need for this Court to clarify this important and "unresolved issue of law relating to class actions." *Vallario*, 554 F.3d at 1263. The district court recognized that there is no way to identify class members here without thousands of individualized proceedings. Nevertheless, the court believed this Court would require it to treat the task of identifying class members *exclusively* as a question of case management; as a result, the court never weighed the need for individualized inquiries on that issue against the common questions in this litigation to determine which predominate. Order at 252-55 & n.65. The court thus concluded that—even when facing the prospect of thousands of mini-trials—it could deny certification only if a proposed class also presented some *other* problem. *Id.* at 258. That might be a choice-of-law problem (*id.* at 280-81), a *Comcast* problem (e.g., *id.* at 319-20, 347-49), or something else, but *something* more than just the need to individually assess whether each claimant satisfies

---

[4] *See, e.g.*, *Smith v. LifeVantage Corp.*, 341 F.R.D. 82, 94, 96 (D. Utah 2022) ("[D]istrict courts in this circuit have disagreed about whether showing ascertainability is required and which ascertainability standard to apply."); *In re EpiPen Mktg., Sales Pracs. & Antitrust Litig.*, 2020 WL 1180550, at *11 (D. Kan. Mar. 10, 2020) (predicting this Court would "reject[] a strict standard requiring an administratively feasible mechanism for identifying class members"); *Cline v. Sunoco, Inc.*, 333 F.R.D. 676, 688 (E.D. Okla. 2019) (requiring it to be "administratively feasible for the court to determine whether a particular individual is a member"); *Cole v. ASARCO Inc.*, 256 F.R.D. 690, 696 (N.D. Okla. 2009) (same).

the most essential element of a cause of action—that he or she actually purchased the product at issue.

The court reached this result not because it believed the result correct, but because it "predict[ed]" that this Court would require it. *Id.* at 253 n.65. This Court should grant review to address (and in Defendants' view, refute) that prediction, because the district court's approach is contrary to Rule 23's text and the Supreme Court's class-certification precedents.

**A.** Other Circuits have taken conflicting positions regarding how the need to identify class members factors into the class-certification analysis.[5]

Some courts treat Rule 23 as containing "an implicit requirement that class members be ascertainable" through "administratively feasible methods." *In re Niaspan Antitrust Litig.*, 67 F.4th 118, 133 (3d Cir. 2023). The Third Circuit holds that "there must be a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition." *Hayes v. Wal-Mart Stores, Inc.*, 725 F.3d 349, 355 (3d Cir. 2013). The Fourth Circuit has

[5] A panel of this Court recently said in an unpublished decision that the need for a class to be ascertainable is "a sub-requirement of numerosity." *Evans v. Brigham Young Univ.*, 2023 WL 3262012, at *5 (10th Cir. May 5, 2023). But it did not address the standard for that determination, let alone reach the question of how to weigh individualized litigation over who qualifies for class membership in the Rule 23(b)(3) predominance analysis.

similarly held that "class litigation should not move forward when a court cannot identify class members without 'extensive and individualized fact-finding.'" *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 658 (4th Cir. 2019) (citation omitted)); *cf. In re Nexium Antitrust Litig.*, 777 F.3d 9, 19-21 (1st Cir. 2015) (requiring an "administratively feasible" "mechanism for distinguishing the injured from the uninjured class members" (citation omitted)).

Other Circuits have not imposed a standalone administrative feasibility requirement, but have held that the need for individualized inquiries into this issue is relevant in assessing whether common issues predominate. The Sixth Circuit, for instance, has not adopted the Third Circuit's absolute requirement, but holds that "the difficulty of identifying class members" is a valid basis for denying certification. *Sandusky Wellness Ctr., LLC v. ASD Specialty Healthcare*, 863 F.3d 460, 473-74 (6th Cir. 2017). Similarly, the Second Circuit rejected "an implied administrative feasibility requirement," but emphasized that "classes that require highly individualized determinations of member eligibility" may fail on predominance grounds. *In re Petrobras Securities*, 862 F.3d 250, 268 (2d Cir. 2017).

By contrast, some Circuits have suggested that individualized inquiries into class membership cannot independently foreclose certification. The Eleventh Circuit decision that the district court predicted this Court would follow, *Cherry v. Dometic Corp.*, concluded that "administrative feasibility has relevance for Rule

23(b)(3) classes" as part of the Rule's superiority requirement—Rule 23(b)(3)(D)'s inquiry into "the likely difficulties in managing a class action." 986 F.3d at 1303. The Eleventh Circuit held that meant the inquiry must be part of a "comparative" analysis that considers alternatives to class litigation, and therefore cannot "alone doom a motion for certification." *Id.* at 1304-05. The Seventh and Ninth Circuits are in accord. *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1127-28 (9th Cir. 2017) (the need to identify class members should be assessed through "the manageability criterion of the superiority requirement"); *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 663 (7th Cir. 2015) ("[E]nsuring that the court will be able to identify class members without 'extensive and individualized fact-finding or mini-trials' … 'is better addressed by' [Rule 23(b)(3)(D)'s manageability requirement] ….").[6]

**B.** This Court should join the Third Circuit, for the reasons given by the district court as its view "[o]n a clean slate." Order at 252. But at a minimum, it should hold that the need for many individualized inquiries into class membership can itself foreclose certification.

[6] The Fifth and Eighth Circuits have declined to impose an administrative-feasibility requirement, without addressing how class-membership inquiries factor into the Rule 23 analysis. *Seeligson v. Devon Energy Prod. Co.*, 761 F. App'x 329, 334 (5th Cir. 2019) (per curiam); *Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.*, 821 F.3d 992, 996 (8th Cir. 2016).

The Eleventh Circuit decision that the district court followed treated the need for individualized litigation over class membership as bearing only on "the likely difficulties in managing a class action," and therefore going only to Rule 23(b)(3)'s superiority prong. *Cherry*, 986 F.3d at 1303. That inquiry "focuses on whether a class action 'will create relatively more management problems than any of the alternatives,' not whether it will create manageability problems in an absolute sense." *Id.* at 1304 (citation omitted).

This approach is contrary to Rule 23(b)(3)'s text, and defeats its purposes. Proof that a claimant actually purchased the product in a case like this—and is therefore a class member—is the most fundamental element of that claimant's cause of action. Where (as here) that can be proved only through individual mini-trials, for each of thousands of claimants, it is no mere case-management issue. Rather, it goes to the express Rule 23(b)(3) requirement to establish that "questions of law or fact common to class members predominate over *any questions* affecting only individual members." (Emphasis added.) The district court's ruling contravenes that text by carving out one type of "question[] affecting only individual members"—questions that determine whether someone actually belongs in the class—and holding that those questions, by definition, cannot predominate over common questions.

To be sure, in many cases class membership can be proved through common evidence, without need for individualized litigation. But where—as here—the district court's analysis makes clear that extensive individualized proceedings would be necessary, there is no basis in Rule 23 to exempt those individualized questions from the predominance inquiry. *See CGC Holding Co. v. Broad & Cassel*, 773 F.3d 1076, 1087 (10th Cir. 2014) ("[W]e must *characterize* the issues in the case as common or not, and then *weigh* which issues predominate."). Under that inquiry, there is no basis for comparison to "other available methods" of adjudication. Common questions either predominate over individual ones or they do not. If not—"if individualized issues will overwhelm those questions common to the class"—predominance is "destroyed" and Rule 23(b)(3) not satisfied, full stop. *Wallace B. Roderick Revocable Living Tr. v. XTO Energy, Inc.*, 725 F.3d 1213, 1220 (10th Cir. 2013).

This understanding is reinforced by the Supreme Court's Rule 23 jurisprudence. An overwhelming number of mini-trials could be avoided here only by forgoing full adversarial litigation of whether each claimant actually purchased the product—such as by Plaintiffs' suggestion below that claimant affidavits should suffice. But the district court itself recognized the unreliability of such affidavits. Order at 256-57. And more importantly, the Supreme Court has made clear that Rule 23 authorizes no such shortcuts; class members must meet the

same standards of proof applicable in an individual action. "Because the Rules Enabling Act forbids interpreting Rule 23 to 'abridge, enlarge or modify any substantive right,' 28 U.S.C. § 2072(b), a class cannot be certified on the premise that [the defendant] will not be entitled to litigate its statutory defenses to individual claims." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 367 (2011).

In short, the claims Plaintiffs seek to litigate would necessarily require thousands of mini-trials just to determine who actually bought NAS menthol cigarettes during the relevant period and in the relevant states. The district court erred by holding that the need for those individual trials could not, alone, defeat certification, and by failing to weigh whether those individual proceedings would predominate over common questions, as required by Rule 23.

**C.** Plaintiffs argued below that requiring an administratively feasible means of identifying class members would effectively doom all low-value consumer class actions. But as the district court recognized, that is not only untrue, but also begs "the question [] why the class action—largely manufactured by attorneys—should go forward when the actual victims cannot be determined." Order at 252.

## II. Review is needed to correct the district court's misapplication of the requirements of *Comcast*.

The decision below also committed "manifest error" (*Vallario*, 554 F.3d at 1263) by running afoul of the Supreme Court's holding in *Comcast* that a class-wide damages model must be tailored to the alleged wrongdoing: "[A] model purporting to serve as evidence of damages in [a] class action must measure *only* those damages attributable to [the operative] theory" of liability. 569 U.S. at 35 (emphasis added). "If the model does not even attempt to do that, it cannot possibly establish that damages are susceptible of measurement across the entire class for purposes of Rule 23(b)(3)," and "[q]uestions of individual damage calculations will inevitably overwhelm questions common to the class." *Id.* at 34–35. The Court thus required "a 'rigorous analysis' to determine whether" the model "supporting a 'plaintiff's damages case [is] consistent with its liability case.'" *Id.* (citation omitted).

The district court failed to heed this requirement in certifying six statewide classes seeking to recover under Plaintiffs' menthol theory. That theory posits that consumers paid some premium for NAS menthol cigarettes because the tobacco in the cigarettes was described as "additive-free" but in fact contained natural menthol that migrated from the cigarette filter. Under *Comcast*, Plaintiffs' damage model needed to "measure only those damages attributable to that the-

ory"—the difference between the value of menthol cigarettes with *entirely* additive-free tobacco (i.e., the menthol does not migrate from the filter to the tobacco) and menthol cigarettes that are free of all additives *except* migrated natural menthol. *Id.* at 35; *see also, e.g.*, *Townsend v. Monster Bev. Corp.*, 303 F.Supp.3d 1010, 1051 (C.D. Cal. 2018) ("[T]o tie a damages model for a misleading statement to a theory of liability, a plaintiff must show that the price premium paid was for the attribute consumers believed the product contained.").

Plaintiffs' damages model does not do this. As the district court recognized in the context of the "safer cigarette" theory, that model would capture the *entire* price value of the "additive-free" descriptor, without accounting for what portion of that value derives from factors having nothing to do with the presence or absence of menthol—for example, the value to consumers of lacking chemical additives like those in other cigarettes. *See* Order at 298 ("Dr. Dubé concedes that his model does not consider other possible interpretations of the label's language."). Plaintiffs' model would thus treat the "additive-free" descriptor as if it tricked consumers into buying cigarettes that are chock-full of additives, when the alleged falsity relates only to the migration into the tobacco of some menthol (the presence of which would hardly surprise a *menthol* cigarette purchaser).

That goes well beyond Plaintiffs' theory of liability. Plaintiffs themselves recognize that consumers will pay more for a cigarette made with tobacco that contains fewer additives. Compl. ¶¶ 12–24. Any value consumers place on the absence of other, non-menthol additives cannot count as damages, as consumers *received* that value when purchasing NAS menthols. Yet Plaintiffs' proposed model would not exclude that value that consumers in fact realized. That violates *Comcast*. If milk were marketed as fat-free but actually contained 0.1% fat, damages would not be the difference between the price of fat-free and whole milk. Instead, a damages model would need to determine the value attributable to the *actual difference* between what consumers were told they were receiving (milk with no fat) and what they received (milk with 0.1% fat). Similarly here, because Plaintiffs' model does not isolate the price difference between what consumers supposedly thought they were receiving and in fact received, "it cannot possibly establish that damages are susceptible of measurement across the entire class." *Comcast*, 569 U.S. at 35.

The district court rejected this conclusion because it viewed Plaintiffs' menthol theory as aligning with district-court decisions in other Circuits "that involve misleading labels which do not rely on the consumers' interpretation of the label such that the plaintiffs' damages model needs to worry about different categories of harm." Order at 298. But in those cases, unlike here, consumers

did not receive *any* value associated with the challenged representation; the full value of the descriptor therefore properly measured damages.[7]

This case, by contrast, does not involve an all-or-nothing misrepresentation. The (unsurprising) presence of menthol in the tobacco of menthol cigarettes labeled additive-free—and that *are* in fact otherwise additive-free—deprives a consumer of only a fraction of the value associated with the description "additive-free." To measure damages attributable to that nuanced theory, Plaintiffs' model needed to test how consumers value the actual NAS representation ("100% additive-free natural tobacco") against their valuation of a package saying, in words or substance: "100% additive-free natural tobacco with menthol flavoring." By instead letting Plaintiffs treat the entire value of the "additive-free" representation as damages, the district court accepted "a methodology that identifies damages that are not the result of the wrong." *Comcast*, 569 U.S. at 37.

The Court should grant review to make clear that, in a consumer-fraud class action, plaintiffs' damages model must isolate the specific value attributable to

---

[7] *Hilsley v. Ocean Spray Cranberries, Inc.*, 2018 WL 6300479, at *1, *13-15 (S.D. Cal. Nov. 29, 2018); *Broomfield v. Craft Brew All., Inc.*, 2018 WL 4952519, at *1-2, *14 (N.D. Cal. Sept. 25, 2018); *In re Dial Complete Mktg. & Sales Practices Litig.*, 320 F.R.D. 326, 328, 330-31 (D.N.H. 2017); *Price v. L'Oreal USA, Inc.*, 2018 WL 3869896, at *1, *9-10 (S.D.N.Y. Aug. 15, 2018); *Goldemberg v. Johnson & Johnson Consumer Cos.*, 317 F.R.D. 374, 382, 394 (S.D.N.Y. 2016).

the supposedly deceptive claim. Because Plaintiffs' model failed to do so, individualized damages "will inevitably overwhelm questions common to the class," providing another reason that the court's certification of six classes should be reversed. *Id.* at 34–35.

## CONCLUSION

The petition should be granted.

Dated: September 15, 2023

Respectfully submitted,


*/s/Andrew G. Schultz*

Andrew G. Schultz
Melanie B. Stambaugh
**RODEY, DICKASON, SLOAN, AKIN & ROBB, P.A.**
201 3rd Street NW, Suite 2200
Albuquerque, NM 87102
aschultz@rodey.com
mstambaugh@rodey.com
505-768-7288

David M. Monde
**JONES DAY**
1221 Peachtree Street NE
Suite 400
Atlanta, GA 30309
dmmonde@jonesday.com
404-521-3939

Meir Feder
Sharyl A. Reisman
**JONES DAY**
250 Vesey Street, Floor 34
New York, NY 10281
mfeder@jonesday.com
sareisman@jonesday.com
212-326-3939

Noel J. Francisco
William D. Coglianese
**JONES DAY**
51 Louisiana Drive NW
Washington, DC 20001
njfrancisco@jonesday.com
wcoglianese@jonesday.com
202-879-3939

*Counsel for Defendants-Petitioners Santa Fe Natural Tobacco Co., Reynolds American Inc., and R.J. Reynolds Tobacco Co.*

## CERTIFICATE OF COMPLIANCE

**1.** This Rule 23(f) Petition For Permission To Appeal complies with the type-volume limitation of Federal Rule of Appellate Procedure 5(c)(1) because, excluding the portions exempted by Federal Rule of Appellate Procedure 32(f), this document contains 5,169 words (as calculated by Microsoft Word).

**2.** This Rule 23(f) Petition For Permission To Appeal complies with the type-face requirements of Federal Rule of Appellate Procedure 32(a)(5) and Tenth Circuit Rule 32(A), and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6), because this document has been prepared in a proportionally spaced typeface using Microsoft Word (version 2302) in 14-point Calisto MT.

Dated: September 15, 2023

*/s/ Andrew G. Schultz*

Andrew G. Schultz
**RODEY, DICKASON, SLOAN, AKIN & ROBB, P.A.**
201 3rd Street NW, Suite 2200
Albuquerque, NM 87102
aschultz@rodey.com
505-768-7288

## CERTIFICATE OF ELECTRONIC SUBMISSION

I hereby certify that, on September 15, 2023, I transmitted the foregoing Rule 23(f) Petition For Permission To Appeal to the Clerk of the Court for the United States Court of Appeals for the Tenth Circuit via the court's CM/ECF system. I certify that service was accomplished by emailing the foregoing Rule 23(f) Petition to Plaintiffs' counsel of record, to which they consented in writing.

Dated: September 15, 2023

*/s/ Andrew G. Schultz*

Andrew G. Schultz
**RODEY, DICKASON,**
**SLOAN, AKIN & ROBB, P.A.**
201 3rd Street NW, Suite 2200
Albuquerque, NM 87102
aschultz@rodey.com
505-768-7288